UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CASSANDRA BUCKLEY, individually and on behalf of those similarly situated,  )<br><br>Plaintiff/Counter-Defendant  )<br><br>v.  )<br><br>S.W.O.R.N. PROTECTION LLC and MICHAEL DELONG  )<br><br>Defendants/Counter-Plaintiffs  ) | Cause No. 1:20-CV-357-HAB |

**OPINION AND ORDER**

Plaintiff Cassandra Buckley has sued her former employers claiming that Defendants violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, by failing to properly compensate her for overtime hours worked and failing to keep proper records. Before the Court are Plaintiff's Motion for Summary Judgment and her Motion to Strike (ECF Nos. 27 and 37). Both motions are fully briefed and ripe for consideration. Having reviewed the filings and the entire record, the Court finds that Defendants committed violations of the Fair Labor Standards Act ("FLSA") and the undisputed facts establish the Plaintiff's damages. Thus, the Court will GRANT summary judgment for Plaintiff on her FLSA claim and award damages. Summary judgment is also GRANTED to Plaintiff on the Defendants' counterclaims under state law for conversion and replevin.

**DISCUSSION**

a.  **Factual Background**

The undisputed material facts[1] are as follows: Buckley began working for Defendants in April 2019 as a manager.[2] (ECF No. 29-1, Employee Profile Sheet; Answer, ECF No. 5, ¶ 12). At all times during her employment, the Defendants were employers covered by the FLSA. (Answer, ¶¶s 4, 6). Amy DeLong was the Human Resources Manager for Defendants. Defendant Michael DeLong is an operator or owner of Defendant S.W.O.R.N. Protection, LLC.

Buckley was hired with an hourly pay rate of $12.00 and was paid a weekly salary of $480.00 for 40 hours of work. (Answer, ¶¶s 13, 14). Defendants did not classify Buckley as exempt from the overtime provisions of the FLSA. (Resp. to Pltf's Interrogatories, ECF No. 29-1, No. 2; Amy DeLong Dep., ECF No. 29-5, at 16-17).[3]

Buckley's employee file did not contain various items required for employers under the FLSA. For instance, the file did not show that she would be paid on a salary basis of $480.00 per week. The file does show that she had the payrate of "1200." Buckley's sex is not in the file, but Defendants contend it was on form EEO-1, kept separate from her employment file by EEOC regulations. (Amy DeLong Aff., ECF No. 36, ¶ 6).[4] Her total daily or weekly straight time and

---

[1] In their response brief, Defendants make no attempt to comply with Fed.R.Civ.P. 56 or N.D.Ind. L. R. 56-1(b). The Statements of Disputed Material Facts consists of a general cross reference to Amy DeLong's Affidavit and deposition. No citations or references are made anywhere in the brief in violation of both Rule 56 and L.R. 56-1. Subsection (e) of the local rule authorizes the Court to "find a fact is not supported if the citation does not include a page or paragraph number to evidence in the record which can be presented in an admissible form unless the court may take judicial notice of the fact." Given the complete absence of any attempt to comply with the applicable rules, the Court accepts the properly supported facts in Plaintiff's filing as true.

[2] Defendants admitted Buckley was hired as a manager in their answer. They have tried to walk back that statement claiming that Buckley was a supervisor and not really a manager. None of this makes any difference to this Court's rulings.

[3] Defendants make no argument in response to the motion for summary judgment that Buckley was an exempt employee. As a result, Defendants have waived the issue.

[4] Plaintiff has moved to strike Amy DeLong's affidavit. The Court will address this motion in the Legal Analysis portion of the Opinion and Order.

2

overtime earnings are not included nor is there any information about when the workweek begins. However, Defendants say her pay stubs listed her total daily/weekly straight time and shows that no overtime was paid. (*Id.* ¶7). Defendants did not produce in discovery any evidence of the total wage paid each period. (Request for Production, No. 2).

Buckley states that because she was a salaried employee the Defendants told her she was ineligible for overtime. (Buckley Decl., ECF No. 6, ¶¶'s 10-11).[5] Neither Amy or Michael DeLong recall whether they told Buckley she was ineligible for overtime. (Amy DeLong Dep, at 68-69; Michael DeLong Dep, ECF No. 4, at 36-37).

It is a fair characterization that Defendants were unclear or unknowledgeable about the FLSA. When questioned in her deposition about FLSA requirements, Amy DeLong repeatedly exhibited little knowledge of them. For instance, she testified that she was unaware of whether the DOL requires that employers maintain time records. (Amy DeLong Dep. at 16-17). And when presented with a DOL Fact Sheet stating that employers are required to maintain hours worked each day and total hours worked each workweek, she responded that if an employee worked hours different than their agreement, the employee was responsible for recording the time. *Id.* at 56. She also engaged in the following exchange:

> Q: What efforts did you undertake as the company's sole HR professional to ensure that [Buckley's] pay arrangement met the requirements of the Fair Labor Standards Act?
>
> A: I don't know.
>
> Q: Did you even do so much as a Google search to figure out whether you were meeting the requirements of the FLSA?

---

[5] In her deposition testimony, submitted by Plaintiff, Amy DeLong testified that she didn't recall whether she told Buckley she was exempt from overtime. (Amy DeLong Dep., at 68-69). In her Affidavit, which Plaintiff has moved to strike, DeLong now recalls definitively that "at no time did Defendants inform, advise, or notify Plaintiff that she was ineligible for overtime." (Amy DeLong Aff. ¶13). As will be explained later, if the assertions in Amy DeLong's affidavit contradict her earlier deposition testimony, those assertions are disregarded.

3

> A: I don't recall.
>
> Q. Did you ever seek legal counsel about whether your pay arrangement with Cassie satisfied the obligations under the FLSA?
>
> A: I don't recall.
>
> Q. What efforts have you undertaken to ensure that your time-keeping arrangements with Cassie satisfied the requirements of the Department of Labor?
>
> A: I don't recall.
>
> Q: Let me clarify here. Is it that you don't recall what efforts you made, or is it that you made no efforts?
>
> A: I don't recall.

(*Id.* at 73-74). Finally, when asked what "HR training, qualifications, or credentials" she has, Amy answered "none" and that she believed her pay arrangement with Buckley was lawful because "I'm paying her a salary for 40 hours of work." (*Id.* at 73).

The undisputed facts show that Buckley regularly worked more than 40 hours in single workweeks. (Answer, ¶16; Buckley Decl. ¶¶s 4-9). Defendants admitted that they "required, instructed, suffered, or permitted" Buckley to work more than 40 hours in single workweeks. (Answer, ¶17). Buckley avers she worked on average 60 hours per week (Buckley Decl. ¶ 4) and was on call all day, every day. (Employee File, at p. 13: noting that Buckley had "no problems adapting to 24/7"). She describes working some days from 5:00 am until midnight and others from 6:00 am to 6:00 pm and then driving home from a remote location. Defendants do not dispute this accounting by Buckley. Instead, they focus on her statement that she was on call and explain that Buckley "was not responsible to be on call all day every day," but was "encouraged" to maintain normal dayshift business hours. (Amy DeLong Aff. ¶ 17). Buckley did not record the time she spent working because she was told she did not have to do so. (Buckley Decl. ¶ 10). More

4

specifically, Buckley was told that because she was a salaried manager she did not need to record her time. (*Id.*).

Defendants admitted that they did not know how many hours per day Buckley worked. (Amy DeLong Dep, at 21; Amy DeLong Aff. ¶ 20). Defendants, however, state that Buckley, like all employees, had to record her hours and that her failure to record her hours explains why they did not know how many hours over 40 she worked in a given week (Amy DeLong Aff. ¶¶s 19-21). No matter how many hours Buckley worked, Defendants never paid her more than $480.00 in wages. (Amy DeLong Dep. at 17-18: "I paid out her salary per the verbal agreement upon her hire."). Defendants have no time records at all for Buckley. (*Id.* at 49: She was permitted to [work more than 40 hours per week]. I have no documentation whether she actually did.").

Although the Defendants believed that employees had to record their time, Buckley was never disciplined for not properly recording her hours. Yet Buckley, as a manager, states she disciplined non-exempt employees who did not record their time properly. (Buckley Dep. ¶¶'s 17-20). Defendants dispute that Buckley could impose discipline but admit that she prepared documentation about non-exempt employees who failed to record their time. (Amy DeLong Aff. ¶23). At no time did Buckley dispute the amount of her paychecks. (*Id.* ¶ 24).

Buckley left her employment with the Defendants on September 4, 2020. After her position was eliminated because of a COVID-related business downturn, Defendants tried to reassign her to an available position in Fort Wayne and provided her with a company vehicle to accommodate her travel to and from the new position. Plaintiff ultimately did not report for duty in Fort Wayne.

Shortly after her employment ended, Buckley received an email from Michael DeLong requesting the return of certain property she had in her possession. (ECF No 29-3). Defendants assert that Plaintiff has failed to return all the items and the vehicle was returned damaged. (Amy

DeLong Aff. ¶¶ 29-31). Attached to Amy DeLong's affidavit are photos showing minor vehicle damage on the hubcaps. She asserts that the cost to repair the damage is $490.00. Yet, Defendants sold the vehicle back to the dealership without having it repaired. Buckley further asserts that all other items in her possession have been returned.

    b. Legal Analysis

        1. *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*,

337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

### 2.     *Motion to Strike*

Plaintiff has moved to strike Amy DeLong's affidavit because it was not timely filed with Defendant's response to the motion for summary judgment. In response, Defendants' counsel submits an affidavit from his legal assistant, Mark Schuster, in which he claims that because of an oversight, he did not electronically file the affidavit when he filed the Defendants' response brief. As soon as he learned about the oversight, on the next business day, he immediately contacted the Clerk's office and filed the affidavit as a supplement to the response brief. (ECF No. 38-1). Plaintiff replies that this is yet another foul up in a long line of litigation misconduct by Defendants and urges the Court to exercise its option under Fed. R. Civ. P. 56(e)(2) and (3) to consider the facts asserted by Plaintiff in response to the summary judgment motion as undisputed.

Plaintiff is understandably frustrated. Plaintiff filed two motions to compel during discovery, both of which were granted. (ECF No. 14, 15, 16). Michael DeLong twice failed to appear for noticed and scheduled depositions. The breaking point occurred when Amy DeLong failed to appear for her deposition, allegedly "so that she and Michael could visit the beach in Florida." (ECF No. 37 at 2). That conduct cost the Defendants $2,827.50 in sanctions payable to Plaintiff's attorney. (ECF No's 24, 26, 32 and 41). Now Plaintiff is again faced with litigation misconduct, this time by an oversight from Defendants' counsel's assistant. Plaintiff asks that the Court give no further leeway to Defendants given this history.

There is no question that Defendants' litigation conduct during discovery has been reprehensible. Ordinarily, this Court will extend some grace to litigants acting in good faith under

7

the theory that the Court prefers to decide cases on the merits, *Boutros v. Avis Rent A Car Sys., LLC*, 802 F.3d 918, 924 (7th Cir. 2015). Despite counsel's oversight in filing the affidavit, he did so just after realizing the mistake. Thus, the Court will consider Amy DeLong's affidavit, with some caveats.

"As a general rule ... this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996); *see also Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."). Thus, where deposition testimony and an affidavit conflict, "the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995).

Portions of Amy DeLong's affidavit fall within these rules. The affidavit offers no explanation, for instance, as to the discrepancy between her deposition testimony – that she did not recall if she told Buckley she had no right to overtime – and her later unequivocal averment that "at no time did Defendants inform, advise or notify Plaintiff she was ineligible for overtime." (Amy DeLong Aff. ¶ 13). This is just one example but it adequately reflects the Court's point that absent an explanation for the discrepancy, it will not consider any paragraph of the affidavit that conflicts with Amy DeLong's earlier deposition.

Other portions of the affidavit contradict the Defendants' admissions in their answer to the complaint. Defendants' answer, which admits a complaint's allegation, constitutes a "binding

judicial admission." *See Crest Hill Land Development, LLC v. City of Joliet,* 396 F.3d 801, 805 (7th Cir. 2005) (citing *Keller v. United States,* 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995)). A judicial admission is, "in effect, a waiver." *Higgins v. Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000). It is a "formal concession[ ] in the pleadings" that has "the effect of withdrawing a fact from contention." *Solon v. Gary Cmty. Sch. Corp.*, 180 F.3d 844, 858 (7th Cir. 1999). Thus, any paragraph of the declaration that conflicts with the Defendants' admissions in the answer will be disregarded. The Motion to Strike is GRANTED in PART and DENIED in PART.

 3. ***Motion for Summary Judgment***

  **a. Overtime Violation**

The FLSA requires a covered employer to pay non-exempt employees an overtime rate of at least one and one-half times the employee's regular rate for hours worked in excess of 40 per workweek. *See* 29 U.S.C. § 207(a)(1). The employee bears the burden of proving that she performed overtime work for which she was not properly compensated while the employer bears the burden to establish that an exemption from the FLSA applies. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2011).

Defendants admitted in their answer to the complaint, and so it is undisputed at summary judgment, that they were Buckley's employers for purposes of the FLSA, that she worked more than 40 hours per week and that Defendants required her to do so. (Answer, ¶¶s 9, 14, 15, 16, and 17). Defendants also concede that they did not pay Buckley overtime wages at any time during her employment and raise no genuine issue of fact or argument that she was an exempt employee. For her part, Buckley's declaration establishes that she worked an average of 60 hours per week for which the Defendants did not compensate her. These undisputed facts adequately establish

9

Defendants' liability for violating the FLSA's overtime provisions. *See, e.g.*, *Kellar*, 664 F.3d at 176–77.

All the above notwithstanding, Defendants make two arguments to save themselves from liability. First, they assert that Buckley, despite being repeatedly asked to record her hours in the time-tracking software, did not do so. The second argument is a variant of the first one; they assert that they were unaware that Buckley was working overtime hours because she didn't record the hours. Even accepting these facts as true for purposes of summary judgment, neither of these arguments alters the analysis.

The FLSA obligates the employer "to exercise its control and see that the work is not performed if it does not want it to be performed." *See* 29 C.F.R. § 785.13. The employer "cannot sit back and accept the benefits without compensating for them." *Id.* "[The employer's] duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, *or where the employee fails to report his overtime hours*." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008) (emphasis added); *Cunningham v. Gibson Elec. Co.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999)( finding any employer "who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation"). Thus, the fact that Buckley did not report her overtime hours matters little to liability under the FLSA.

Nor does Defendants' assertion that they lacked knowledge of Buckley's overtime hours exculpate them from liability. Defendants are liable under the FLSA if they knew, either actually or constructively, that Buckley was working overtime. *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F.Supp.2d 837, 842 (N.D.Ill.1998). It is true that "the FLSA stops short of requiring the employer

to pay for work it did not know about, and had no reason to know about," *Kellar*, 664 F.3d at 177, but "an employer's knowledge is measured in accordance with his duty ... to inquire into the conditions prevailing in his business.... [A] court need only inquire whether ... [the employer] had the opportunity through reasonable diligence to acquire knowledge." *Id.* (quoting *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994)).

Defendants admitted in their answer that they "required" or "instructed" Buckley to work more than 40 hours in single workweeks. (Answer, ¶7). When that admission is considered against the record as a whole, Defendants' claim that it had no idea Buckley was doing so falls flat. An employer cannot direct an employee to work overtime and then become an ostrich, bury his head in the sand, and claim he didn't know what his employee was doing. Indeed, "[w]here an employer claims a lack of knowledge but the evidence (as here) strongly supports an inference of deliberate ignorance, the proper conclusion (just as in the "ostrich" instruction that is often given to a jury in defining "knowingly" for criminal case purposes…) is that the employer knew about the overtime hours." *Cunningham,* 43 F. Supp. 2d at 976. On this record, a reasonable inference exists that, at the very least, Defendants had constructive knowledge that Buckley was working overtime hours because, as they admit, they instructed her to do so. Defendants are liable under the FLSA for overtime violations.

  b.  **Record Keeping Violation**

It is just as clear that the Defendants' record keeping was subpar. The FLSA requires that every covered employer "shall make, keep, and preserve ... records of the persons employed" and of "the wages, hours, and other conditions and practices of employment maintained" by the employer, and "shall preserve such records for such periods of time" required by regulation. 29 U.S.C. § 211(c). Records must include, among other items, an employee's regular hourly rate;

hours worked each workday and each workweek; the total daily or weekly straight-time earnings or wages due; and the total premium pay. 29 C.F.R. § 516.2(a)(6)-(9). Payroll records must be maintained for three years and time records, including timecards, must be retained for two years. 29 C.F.R. §§ 516.5, 516.6. Defendants have not produced any of these records and when counsel inquired if Defendants had *any* time records for Buckley, Amy DeLong responded "no." (Amy DeLong Dep. at 49). What's more, it is a reasonable inference from this record that the Defendants had no concept of what records they were required by law to maintain. Defendants violated the record keeping requirements of the FLSA.

### c. Overtime Damages

Although Plaintiff has shown that Defendants violated the FLSA, her initial burden is two-fold; she must also provide sufficient evidence to allow the Court to reasonably approximate damages. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008). When the employer's records are inaccurate or inadequate the Plaintiff may rely on the burden shifting formulation first explained in *Anderson*. Defendants records here were not merely inaccurate or inadequate – they don't exist. And so the Court employs the burden-shifting approach. Under that methodology, the employee must first establish "that [s]he has in fact performed work for which [s]he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. The burden then shifts to the employer to produce "evidence of the precise amount of work performed or ... evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Tyson Foods*, 577 U.S. at 456 (quoting *Anderson*, 328 U.S. at 687–88).

12

An FLSA plaintiff need not provide documentary evidence or definitive calculations of hours worked—his or her own testimony based on memory is enough to survive summary judgment if it is sufficiently specific. *E.g.*, *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 596 (7th Cir. 2008) (denying summary judgment because plaintiff's testimonial "evidence alone is sufficient to raise a genuine issue of fact regarding the accuracy of the records"); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)) ("Relying on the employee's recollection is permissible given the unlikelihood that an employee would keep his own records of his work hours."). Mindful of this, Buckley submits her declaration stating that she worked an average of 60 hours per week during her employment. She states that her duties involved considerable travel from her home to various sites of either customers or potential customers of Defendants, that she often started her workday at 5:00 am and worked until after midnight, and that many times she would begin at 6:00 am, work until 5 or 6 pm, and then drive home from a remote location. (Buckley Decl. ¶¶s 5-9). These allegations are enough to meet her burden and shift the burden to the Defendants. *See Brown*, 534 F.3d at 597 (noting that an employee may explain in their testimony that certain "triggering factors" (such as busy seasons or special events that required staying late) required uncompensated overtime).

Rather than introducing evidence to undercut Plaintiff's claims, the Defendants offer a half page analysis so jam-packed with typographical and grammatical errors that the Court can make no sense of it. Defendants cite no legal authority or offer any evidence to sway the Court that Plaintiff's declaration should not be accepted as unrefuted. Thus, without any evidence to rebut Plaintiff's assertions, the Court finds Plaintiff has met her burden.

Plaintiff estimated she averaged 20 hours of uncompensated overtime per week at an overtime hourly rate of $18.00 which equates to $360.00/week. Buckley began working for

Defendants on April 16, 2019, and was paid through September 15, 2020. Accounting for a COVID-related furlough, Buckley claims 55 weeks for which she was underpaid by $360.00 and claims she is due $19,800.00 in unliquidated damages. The Court determines Plaintiff has made an adequate showing that she is entitled to $19,800.00 in unliquidated damages.

### d. Liquidated Damages

An employer who is liable for unpaid overtime is also liable under the FLSA for an additional equal amount as liquidated damages. *See* 29 U.S.C. § 216(b); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 405 (7th Cir. 1999). Liquidated damages are "mandatory [for FLSA violations] unless the court finds that the employer was acting in good faith and reasonably believed that its conduct was consistent with the law." *Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998). To establish good faith and reasonableness, an employer must demonstrate that it took affirmative steps to ascertain FLSA requirements; showing that the violations were not willful is not enough. *See Pautlitz v. City of Naperville*, 874 F.Supp. 833, 835 (N.D. Ill. 1994) (citing *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 908–09 (3d Cir. 1991)). The burden of proving both good faith and reasonable belief falls on the employer. *Uphoff*, 176 F.3d at 405.

On this score, Defendants again fall short. Amy DeLong's deposition testimony, where she repeatedly answered "I don't recall" when asked what attempts she made to determine whether the Defendants were compliant with the FLSA's requirements and whether Buckley's pay arrangement complied with the FLSA, sinks any attempt to establish good faith and reasonableness. There is no evidence that Defendants attempted to ascertain the FLSA requirements. Plaintiff has shown an entitlement to liquidated damages in an amount equal to her unpaid overtime compensation, or $19,800.00.

### e. Defendants' Counterclaims

Plaintiff also moves for summary judgment on Defendants' counterclaims under Indiana law for conversion and replevin. "Conversion, as a tort, is the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's." *Computers Unlimited, Inc. v. Midwest Data Systems, Inc.,* 657 N.E.2d 165, 171 (Ind. Ct. App. 1995). Replevin, in turn, "is a speedy statutory remedy designed to allow one to recover possession of property wrongfully held or detained as well as any damages incidental to the detention." *United Farm Family Mut. Ins. Co. v. Michalski,* 814 N.E.2d 1060, 1066 (Ind. Ct. App. 2004). *See also* Ind. Code § 32–35–2–1 (providing that where property is wrongfully taken or unlawfully detained from the owner or person claiming possession of the property, the owner, or claimant may sue for possession of the property). Defendants assert in their counterclaims that Buckley retained certain property she used as part of her employment after she no longer worked there. They also contend that Buckley returned the employer-provided vehicle damaged and that she is responsible for the damage.

The Court will address these claims in reverse order – replevin first. To recover in an action for replevin, a plaintiff must prove his title or right to possession; that the property is unlawfully detained; and that the defendant wrongfully holds possession. *United Farm Family,* 814 N.E.2d at 1067; *Deere & Co. v. New Holland Rochester, Inc.,* 935 N.E.2d 267, 269 (Ind.Ct.App.2010). Accepting the facts favorably to the Defendants, they assert that although Buckley returned many items, she wrongfully retains possession of: one vertical four drawer cabinet; four hanging file frames; one black top/metal frame desk; under desk folding file drawer; one coffee organizer; and one Post-it note holder. (Amy DeLong Aff. ¶29). They seek the replacement cost of these items.

First, none of these items are in the factual allegations of the Defendants' counterclaim as being in Buckley's possession and there is no evidence that Defendants ever asked her to return them. Second, Defendants have offered no evidence that Buckley ever had possession of these items. *See Owens v. Gascho*, 154 Ind. 225, 56 N.E. 224 (1899) (to maintain an action in replevin it is necessary to show that the defendant was in actual or constructive possession of the property when the action was commenced). Third, Defendants admit that all the items listed in the counterclaim have been returned. (Amy DeLong Dep. at 39-46). And finally, Buckley avers that she returned all the items she was asked to return. Without evidence that Buckley is in possession of items that do not belong to her and that she has refused to return, Defendants have not raised a genuine issue of fact that Buckley wrongly retains possession of any property.

Nor have the Defendants raised a genuine issue of fact on their conversion claim. "A prima facie case of conversion requires demonstration that the tortfeasor appropriated another's personal property for the tortfeasor's own use and benefit, in exclusion and defiance of the owner's rights, and under an inconsistent claim of title." *Campbell v. Criterion Grp.*, 621 N.E.2d 342, 346 (Ind. Ct. App. 1993). There is no evidence presented that Buckley appropriated any of the property for her own use or that she retains any property of the Defendants now. The undisputed evidence is that the Defendants requested the return of specific items, including the company vehicle Buckley was provided, and Buckley returned them. As for the minor vehicle damage, Defendants have altogether provided no evidence that Buckley damaged the vehicle or that she was under any contractual or other obligation to repair it before its return to Defendants. The Court is not willing to imply such an obligation. No genuine issues of material fact exist as to Defendants' counterclaim for conversion. The Plaintiff's Motion for Summary judgment on the counterclaims is GRANTED.

## **CONCLUSION**

Based on the above reasoning, Plaintiff's Motion for Summary Judgment (ECF No. 27) is GRANTED in all respects. The Plaintiff's Motion to Strike (ECF No. 37) is GRANTED in part and DENIED in part. The Clerk is directed to enter judgment for the Plaintiff on her Complaint in the amount of $39,600.00 (consisting of $19,800.00 in unpaid overtime compensation and $19,800.00 in liquidated damages) and in Plaintiff's favor on the Defendants' counterclaims. As the "prevailing party" under the FLSA, Plaintiff is entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *Johnson v. GDF, Inc.*, 668 F.3d 927, 930 (7th Cir. 2012). Plaintiff shall have fourteen (14) days to file a properly supported request for attorney's fees and costs.

SO ORDERED on September 30, 2022

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT